Kevin M. Zietz, Esq. (SBN 186244)
E-mail:  kevin@zietzlaw.com
LAW OFFICES OF KEVIN M. ZIETZ, PC
16055 Ventura Boulevard, Suite 650
Encino, California 91436
Tel:  (818) 981-9200
Fax: (818) 981-9201

Todd Krauss, Esq. (SBN 187991)
E-mail:  todd@tkrausslaw.com
TODD KRAUSS, APC
16055 Ventura Boulevard, Suite 650
Encino, California 91436
Tel:  (818) 981-1007
Fax: (818) 639-8111

Attorneys for Plaintiff,
SAJID ALI

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAJID ALI,<br><br>　　　　Plaintiff,<br><br>v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY; BANK OF AMERICA CORPORATION LONG TERM DISABILITY PLAN; and DOES 1 to 10, Inclusive,<br><br>　　　　Defendants. | Case No. :<br><br>**COMPLAINT FOR DAMAGES UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT**<br><br>**[29 U.S.C. §1132(a)(1)]** |

Plaintiff, SAJID ALI (hereinafter referred to as "Plaintiff"), complains of Defendants METROPOLITAN LIFE INSURANCE COMPANY (hereinafter referred to as "MetLife"), and BANK OF AMERICA CORPORATION LONG TERM DISABILITY PLAN (hereinafter referred to as the "Plan"), as follows:

/ / /

//

**COMPLAINT FOR DAMAGES UNDER ERISA**

**JURISDICTION AND VENUE**

1.      This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1337 and 29 U.S.C. §1132(a)(1), (e), (f), and (g), of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1101. et. seq. (hereafter ERISA) as it involves a claim by Plaintiff for disability benefits under an employee benefit plan regulated and governed under ERISA.  Jurisdiction is predicated under these code sections as well as 28 U.S.C. §1331 as this action involves a federal question.

2.      The events or omissions giving rise to Plaintiff's claim occurred in this judicial district, thus venue is proper here pursuant to 28 U.S.C. §1391(b)(2), and the ends of justice require it.

3.      The ERISA statute at 29 U.S.C. §1133, in accordance with Regulations of the Secretary of Labor, provides a mechanism for internal appeal of benefit denials. Those avenues of appeal have been exhausted.

4.      Plaintiff exhausted the appeal process on or about November 15, 2022, at which time he was informed that MetLife was upholding the decision to terminate his Long-Term Disability (LTD) benefits (as of September 27, 2022 onward), and that he has exhausted his administrative rights under the Plan.

**GENERAL ALLEGATIONS**

5.      Plaintiff is informed and believes and thereon alleges that the Plan is an employee welfare benefit plan established and maintained by his employer, BANK OF AMERICA CORPORATION, to provide its employees with long-term disability insurance to pay a portion of a covered employee's income during a period of disability.

6.      The Plan can be sued as an entity pursuant to 29 U.S.C. §1132(d)(1).

7.      Plaintiff is an individual citizen and resident of the State of California, County of Los Angeles, residing within the Central District of the State of California.

8.      On information and belief, MetLife issued a policy that fully insures the Plan, which is contractually obligated to pay benefits for claims covered and

**COMPLAINT FOR DAMAGES UNDER ERISA**

approved through the Plan.

## FACTUAL BACKGROUND

9.      At all times relevant hereto, Plaintiff, currently age 57 was employed by Bank of America.  He was a participant and beneficiary of the Plan at all times mentioned herein.

10.      Plaintiff worked as a Branch Manager, which MetLife determined to be a light duty physical demand level occupation.  His occupation required that he would attract and retain talent by personally interviewing candidates, training employees, set schedules, work with the customers and solve problems, manage the safe, push/pull carts of coins into safe and unload them, and climb ladders sometimes to help customers access their safety deposit boxes.  The physical demands of Plaintiff's occupation included sitting, and standing for up to $2/3^{rd}$ of the day, walking for up to $1/3^{rd}$ of the day, bending, repetitive use of hands, grasping, find finger dexterity, pushing and pulling up to $2/3^{rd}$ of the day and lifting up to 25 pounds up to $1/3^{rd}$ of the day.

11.      The policy defines "Disabled" or "Disability" as follows:

"Due to Sickness or as a direct result of accidental injury:

* You receive Appropriate Care and Treatment and complying with the requirements of such treatment unless, in the opinion of a Physician, future or continued treatment would be of no benefit; and

* You are unable to earn in the first 24 months of Sickness or accidental injury, more than 80% of Your Pre-Disability Earnings at Your Own Occupation from any employer in Your Local Economy; and

* after such period, more than 60% of your Pre-Disability Earnings from any employer in Your Local Economy at any gainful occupation for which You are reasonably qualified taking into account Your training, education and experience."

12.      Plaintiff last worked on September 25, 2020.  He was placed off work

**COMPLAINT FOR DAMAGES UNDER ERISA**

by his doctor due to right hip fracture resulting in right hip intramedullary nailing surgery, left femur fracture bi-lateral knee osteoarthritis, knee and hip pain, poor bone density, migraines, anxiety, and depression,

13.    After satisfaction of the 90-day elimination period, Plaintiff's LTD benefits became payable effective March 27, 2021.

14.    MetLife initially made a determination that Plaintiff was totally disabled and unable to perform the duties of his own occupation.

15.    In a letter dated November 4, 2021, MetLife determined that Plaintiff's no longer met the definition of disability after having the claim reviewed by a nurse consultant, a board certified orthopedic doctor both who provided restriction and limitations in contrast to Plaintiff's doctors.

16.    MetLife concluded that Plaintiff had restriction and limitations within the physical demands of his own occupation in that he could stand for 2 hours, walk for up to 1 hour per day with a cane.  The restrictions and limitations do not meet the requirements of Plaintiff's own occupation.

17.    Plaintiff appealed and his benefits were reinstated on February 28, 2022.

18.    In a letter dated July 14, 2022, MetLife again denied Plaintiff's benefits alleging he no longer meet the definition of disability as the file was reviewed by a nurse consultant, clinical psychologist, and a vocational rehabilitation and labor market analysis was conducted, which based on Plaintiff's job description along with the restriction and limitations opined to by MetLife's doctors.

19.    MetLife's reviewing doctors and nurses noted an EMG was normal even though there were some abnormal activities noted, and never mentioned any of Plaintiff's MRI's which revealed objective findings.

20.    On June 15, 2022 Plaintiff submitted a timely written request to appeal the decision to terminate his LTD benefits and provided additional medical records in support of his claim, explaining his inability to perform activities of daily living, due to his pain, confusion and sleep issues.

- 4 -

**COMPLAINT FOR DAMAGES UNDER ERISA**

21.   Plaintiff's doctor provided restriction and limitations that noted that the Plaintiff could sit for 1 hour intermittently,  stand for 1/2 hour intermittently, walk for ¼ of an hour intermittently, lift/push/pull/carry 0-5 pounds frequently, and 5-10 pounds occasionally, occasionally climb stairs, never climb a ladder, stoop, kneel or crouch.  His doctor noted that the Plaintiff was permanently disabled and not able to work, and that he has not reached maximum medical improvement.  These restriction and limitations were due to a diagnosis of from his bilateral hip and knee pain while standing or with daily activities, back pain radiating down both legs, reduced range of motion, multilevel disc bulges, osteoarthritis, bilateral carpal tunnel bilateral plantar fasciitis, anxiety and depression.

22.   MetLife had a doctor board certified in psychology conduct a peer review on July 14, 2022.  The peer reviewer opined that there was no evidence of impairment since all symptoms were self-reported or claimed observations and there was no medical side effects noted in the records.

23.   MetLife also had a doctor board certified in orthopedics conduct a peer review on July 14, 2022.  The doctor opined that the medical information does support functional limitations from July 15, 2022 onward.  However, the doctor opined that the restriction and limitations that he would place on the Plaintiff would be standing for 4 hours, walking for 3 hours sitting unrestricted and can push/pull/carry and lift up to 20 pounds and can work full-time as they fit essential duties of his own occupation.

24.   The reviewing orthopedic doctor opined that the Plaintiff was not using any walking devices, that his motor strength and sensation are intact and that the restriction and limitations he suggested would allow for sedentary work.   However, this is incorrect in that the Plaintiff uses a cane for walking and the doctor never mentioned the documented limited range of motion in all of Plaintiff's medical records. MetLife ultimately concluded that the medical and occupational information on file supports that Plaintiff has the functional capabilities to perform the essential

- 5 -

functions of your own occupation.

25.    Plaintiff timely appealed in writing on October 3, 2022 noting continued mental and physical deterioration, his constant state of pain and pointing out that his CT scans do in fact show osteoarthritis.

27.    MetLife again had two peer reviews conducted by board certified psychologists who opined that there was testing done showing conditions, but since there was no medication adjustment or escalated treatment, there was no impairment. Both psychologists concluded that the evidence did not suggest findings of limitations that would limit the Plaintiff from working full-time.

28.    MetLife also had a board certified orthopedic surgeon review the file who opined Plaintiff's medical history showed lumbar multilevel disc bulges post right hip fracture, intramedullary nailing surgery, post femur-fracture, bilateral knee osteoarthritis,  bilateral carpal tunnel, bilateral plantar fasciitis.  The doctor opined there was justified medical restriction and limitations for Plaintiff's medical condition  which allowed for standing for 4 hours per day, walking up to 2 hours per day, sitting unrestricted, lifting, pushing, pulling and carrying up to 20 pounds from September 28, 2022 onward and that the Plaintiff could work full-time.

29.    After some additional medical records were reviewed, it did not change the position of the reviewing doctor.

30.    MetLife had a Vocational Rehabilitation Consultant evaluate the Plaintiff's ability to perform alternative occupations beyond September 28, 2022 which identified three potential occupations.   Even though Plaintiff notified the Defendant of being under the constant care of an Orthopedic Surgeon and Psychiatrist, MetLife concluded that Plaintiff was able to perform these occupations based upon his training, experience and physical capabilities along with meeting the financial criteria of the plan.

///

//

**COMPLAINT FOR DAMAGES UNDER ERISA**

## COUNT ONE

**For Damages and Benefits Against Defendants**

**METROPOLITAN LIFE INSURANCE COMPANY; BANK OF AMERICAN LONG TERM DISABILITY PLAN;**

**(Pursuant to 29 U.S.C. Section 1132(a)(1))**

31.    Plaintiff hereby re-alleges and incorporates paragraphs 1 through 30 as if fully set forth herein.

32.    The LTD policy issued by MetLife has an effective date of October 23, 2017, with a policy anniversary date of October 23rd.

33.    The policy and/or other plan documents do not contain an express grant of discretionary authority, therefore the court will apply a de novo standard of review.

34.    In the event that the policy and/or other plan documents do contain an express grant of discretionary authority, *California Insurance Code* § 10110.6 will render that grant of authority null and void, and the Court will apply a de novo standard of review.

35.    Plaintiff's claim is for non-vested employee welfare benefits, so the controlling plan will be the one that existed at the time that his ERISA cause of action accrued (which is when LTD benefits were finally denied on November 15, 2022). The decision to deny benefits was rendered multiple anniversary dates after *California Insurance Code* § 10110.6 took effect, therefore the controlling policy cannot by law have a valid grant of discretionary authority.

36.    The weight of the medical evidence in the administrative record supports a determination that Plaintiff has not been able to perform the material duties of his occupation due to his limitations and restrictions, since September 27, 2022.

37.    In the event that the court applies an abuse of discretion standard, Plaintiff alleges that MetLife has a conflict of interest because it is the claims administrator and the funding source of claims paid pursuant to the LTD policy that insures the PLAN.

38.    In the event that the court applies an abuse of discretion standard, MetLife's claims decision was illogical, implausible, and/or without support in inferences that may be drawn from the facts in the record.

39.    As a direct and proximate result of MetLife's wrongful denial of LTD benefits, Plaintiff contends that MetLife has breached the contract by not paying benefits, payable at the rate of $4,202.40 per month, less applicable offsets, from September 27, 2022 to the present and continuing.

40.    As a further direct and proximate result of the denial of benefits, and due to MetLife's failure to pay benefits, Plaintiff had to engage the services of attorneys to assist him in recovering benefits due him under the terms of the Plan. Accordingly, Plaintiff will be entitled to reasonable attorneys' fees in an amount according to proof pursuant to 29 U.S.C. Section 1132(g)(l).

///
///
///
//
//
//
/
/
/
/
/
/
/
/
/
/
/

- 8 -

WHEREFORE, plaintiff demands judgment against Defendants, and each of them, as follows:

<u>**Count One**</u>

1.      Damages for breach of contract pursuant to 29 U.S.C. Section 1132(a)(1)(B), for Long-Term Disability benefits payable at the rate of $4,202.40 per month, less appropriate offsets, from September 15, 2022 to the present and continuing;

2.      Interest on said amounts in accordance with law;

3.      For reasonable attorneys' fees and costs in a sum according to proof, pursuant to 29 U.S.C. Section 1132(g)(1).

4.      For any further relief that the court deems reasonable and just.


DATED:  March 8, 2023                 Respectfully submitted,

                                      TODD KRAUSS, APC



                                      By: *Todd Krauss*
                                         Todd Krauss
                                         Attorney for Plaintiff
                                         SAJID ALI

**COMPLAINT FOR DAMAGES UNDER ERISA**